**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

UNITED STATES OLYMPIC AND PARALYMPIC
COMMITTEE,

     Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

     Defendants.

Civil Action No.: 1:24-cv-08632

Judge LaShonda A. Hunt

Magistrate Judge Young B. Kim

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE
DEFENDANTS IDENTIFIED IN [AMENDED] SCHEDULE A**

Plaintiff, UNITED STATES OLYMPIC AND PARALYMPIC COMMITTEE ("USOPC"

or "Plaintiff"), submits the following memorandum in support of its Motion for Entry of Default

and Default Judgment under Fed. R. Civ. P. 55 against the Defendants identified in the [Amended]

Schedule A (collectively, the "Defaulting Defendants") based on Plaintiff's action for Violation

of the Ted Stevens Olympic and Amateur Sports Act (Count I), Trademark Infringement and

Counterfeiting (Count II), and False Designation of Origin (Count III).

As set forth in the Olympic Charter, the USOPC is obligated to protect Olympic intellectual

property in the United States for the benefit of the Olympic Movement. [1] at ¶ 15. In recognition

and furtherance of the scope of the USOPC's responsibilities and undertakings, Congress granted

the USOPC the exclusive right to use and control the use of Olympic terminology and imagery

within the United States. *See* The Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. §

220506(a); [1] at ¶ 15. The Ted Stevens Act authorizes the USOPC to file a civil action against

the unauthorized use "for the purpose of trade, to induce the sale of any goods or services, or to

promote any theatrical exhibition, athletic performance, or competition…[of] any trademark, trade name, sign, symbol, or insignia falsely representing association with, or authorization by" the USOPC or its affiliates. 36 U.S.C. § 220506(c); [1] at ¶ 16. The intent of Congress in granting the USOPC exclusivity over the Olympic brand was to generate revenue to finance the United States' involvement in the Olympic Games. [1] at ¶ 17. Although Congress charged the USOPC with the responsibility to finance U.S. participation in the Olympics, the USOPC does not receive financial assistance from the United States Government. *See U.S. Olympic Comm. v. Intelicense Corp.*, S.A., 737 F.2d 263, 266 (2d Cir. 1984) ("the USOC is the only NOC [National Olympic Committee] that does not receive formal financial assistance from the Government" (emphasis added); [1] at ¶ 17. As the United States Supreme Court has explained, the unambiguous intent of Congress in granting the USOPC exclusivity over the Olympic brand is to generate revenue to finance the United States' involvement in the Olympic Games. *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522 (1987); [1] at ¶ 18. "[I]t is clear that the Congressional intent in enacting [the Act] was to promote the United States Olympic effort by entrusting the USOC with unfettered control over the commercial use of Olympic-related designations" to "facilitate the USOC's ability to raise those financial resources from the private sector that are needed to fund the United States Olympic Movement." *Intelicense Corp.*, 737 F.2d at 266. [1] at ¶ 18. The USOPC raises the money it needs to operate by, in large part, licensing use of its intellectual property to sponsors and licensees. These legitimate license fees pay to house, feed, train, and otherwise support U.S. Olympic athletes, and finance this country's participation in the Olympic Games. [1] at ¶ 19. Plaintiff's use and registrations of the Olympic Trademarks create trademark rights in the Olympic Trademarks that are subject to enforcement under the Ted Stevens Act and the Lanham Act. *Id*. at ¶ 21. The Olympic Trademarks are distinctive and identify the merchandise as goods

2

from Plaintiff. *Id*. at ¶ 22. The registrations for the Olympic Trademarks constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use the Olympic Trademarks pursuant to 15 U.S.C. § 1057 (b). *Id*. The U.S. registrations for the Olympic Trademarks have been continuously used and never abandoned. *Id*. at ¶ 23. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Olympic Trademarks. *Id.* at ¶ 24. As a result, products bearing the Olympic Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff. *Id*.

On information and belief, the Defendants create numerous Defendant Internet Stores and design them to appear to be selling genuine Olympic products, while selling inferior imitations. *Id*. at ¶ 10. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. *Id*. at ¶¶ 6, 10. Defaulting Defendants conduct business throughout the United States, including within the State of Illinois and this judicial district, through the operation of the fully interactive commercial websites and online marketplaces operating under the online marketplace accounts identified in [Amended] Schedule A (collectively, the "Defendant Internet Stores"). *Id*. at ¶ 2. Each Defaulting Defendant targets the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit USOPC branded Olympic Products to consumers within the United States, including the State of Illinois. *Id*. at ¶¶ 2, 25-26. Additional factual assertions applicable to Defaulting Defendants are found in Paragraphs 26-36 of the Complaint are incorporated herein. *Id*. at ¶¶ 26-36.

USOPC filed this action on September 19, 2024, alleging, among other claims, violation of the Ted Stevens Olympic and Amateur Sports Act and federal trademark infringement and seeking statutory damages and injunctive relief. [1]. On September 24, 2024, this Court granted USOPC's *Ex Parte* Motion for Entry of a Temporary Restraining Order [24] (the "TRO") and subsequently converted the TRO into a Preliminary Injunction on October 8, 2024 [33]. Paragraph 7 of the TRO permitted USOPC to complete service of process to Defendants by electronically publishing a link to the Complaint, this Order, and other relevant documents on a website and by sending an e-mail to the e-mail addresses identified in Corrected Exhibit 2 to the Declaration of Jay Harvey Paragoso and any e-mail addresses provided for Defendants by third parties that includes a link to said website. The Defendants identified in the [Amended] Schedule A associated with Walmart, Inc. ("Walmart") accounts were properly served on September 26, 2024. [29]. None of the Defaulting Defendants has entered an appearance or otherwise defended this action. *See* Declaration of Keith A. Vogt (the "Vogt Declaration") at ¶ 2.

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), USOPC now moves this Court for an Order entering default and default judgment finding that Defaulting Defendants are liable on Counts I, II, and III of USOPC's Complaint. Fed. R. Civ. P. 55(a) and (b)(2). USOPC further seeks an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against each of the Defaulting Defendants for use of infringing and counterfeit Olympic Trademarks in connection with products sold through each of the Defendant Internet Stores. USOPC also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Counterfeit/Infringing Products, and that all assets in Defaulting Defendants' financial accounts operated by Walmart as well as any newly discovered assets, be transferred to USOPC.

## ARGUMENT

### I.    JURISDICTION AND VENUE ARE PROPER IN THIS COURT

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. §§ 1051 et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in Illinois and causes harm to USOPC's business within this judicial district. *See* [1] at ¶ 2; *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive commercial internet websites and online marketplace accounts operating under the Defendant Internet Stores, each of the Defaulting Defendants has targeted sales from Illinois residents by operating websites and/or online marketplace accounts that offer shipping to the United States, including Illinois and, on information and belief, has sold Counterfeit/Infringing Products to residents within the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. [1] at ¶ 2. As such, personal jurisdiction is proper since each of the Defaulting Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois. *See, e.g., NBA Properties, Inc. v. HANWJH,* No. 21-2909, 2022 WL 3367823, at *7 (7th Cir. Aug. 16, 2022) (concluding that personal jurisdiction is proper when a defendant purposefully directs its actions to Illinois via third-party online retailers); *see also, e.g.,*

*Khara Inc. and Ground Works Co., Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 23-cv-14431 (N.D. Ill. Nov. 29, 2023); *Moomin Characters Oy, Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 23-cv-04270 (N.D. Ill. Sept. 15, 2023).

## II.     USOPC HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). On September 19, 2024, USOPC filed its Complaint alleging, among other claims, Violation of the Ted Stevens Olympic and Amateur Sports Act (Count I), Federal Trademark Infringement and Counterfeiting, 15 U.S.C. § 1114 (Count II), and False Designation of Origin, 15 U.S.C. § 1125(a) (Count III). [1]. The Defendants were properly served on September 26, 2024. [29]. Despite having been served with process, the Defaulting Defendants have ignored these proceedings and failed to plead or otherwise defend this action. Vogt Declaration at ¶ 2. Upon information and belief, the Defaulting Defendants are not active-duty members of the U.S. armed forces. *Id.* at ¶ 3. Accordingly, USOPC asks for entry of default against the Defaulting Defendants.

## III.     USOPC HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a

matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

At least twenty-one (21) days have passed since Defendants were served, and no answer or other responsive pleading has been filed by any of the Defaulting Defendants identified in the [Amended] Schedule A. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate, and consistent with previous similar cases in front of this Court, USOPC requests an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark infringement and counterfeiting against each of the Defaulting Defendants for use of infringing and counterfeit imitations of USOPC's Olympic Trademarks in connection with products sold through the Defendant Internet Stores. USOPC also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Counterfeit/Infringing Products, and that all assets in Defaulting Defendants' financial accounts operated by Walmart, and any newly identified accounts be transferred to USOPC.

A.      Violation of the Ted Stevens Olympic and Amateur Sports Act

Pursuant to 36 U.S. Code § 220506(c), the USOPC may pursue remedies available under the Lanham Act to enforce its rights in the Olympic Marks and the Olympic Symbols. Here, § 220506(c) provides that the USOPC has exclusive rights to use the symbol of the International Olympic Committee, the words "Olympic" and "Olympiad", and may bring a civil action against a party engaged in unauthorized use for the purpose of trade or to induce the sale of goods. In upholding Congress' grant of the exclusive use of the word "Olympic" to the United States Olympic Committee in 1987, the Supreme Court recognized that the Congressional recognition of the exclusive right when a word acquires value "as the result of organization and the expenditure of labor, skill, and money." *San Francisco Arts Athletics v. U.S.O.C*, 483 U.S. 522,

532 (1987). The Supreme Court has stated that "Congress reasonably could find that since 1896, the word 'Olympic' has acquired what in trademark law is known as a secondary meaning – it 'has become distinctive of [United States Olympic Committee's] goods in commerce.'" (internal citation omitted). *Id*. at 534. It is undisputed that the USOPC received in 1973 the federal trademark registration for "Olympic" and currently holds a combination of federal registered trademarks in the words and logos for "Olympic", "Team USA", "Tokyo 2020", "Beijing 2022", and "Paris 2024". *See* [1-1]. Defendants used the Olympic Trademarks in commerce without Plaintiff's consent in connection with the sale of counterfeit goods, falsely suggesting an association with Plaintiff and the Olympic Games. *See* [18-3] Declaration of Jay Harvey Paragoso at ¶ 10. This use was clearly for the purpose of trade and to induce the sale of the counterfeit goods. Therefore, USOPC requests entry of judgment with respect to Count I for violation of the Ted Stevens Olympic and Amateur Sports Act against the Defaulting Defendants.

### B. Trademark Infringement and Counterfeiting

To properly plead a claim of trademark infringement and counterfeiting pursuant to the Lanham Act, a plaintiff must allege that: (1) its mark is distinctive enough to be worthy of protection, (2) defendants are not authorized to use the mark, and (3) defendant's use of the mark causes a likelihood of confusion as to the origin or sponsorship of defendant's products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citing *Bliss Salon Day Spa v. Bliss World LLC,* 268 F.3d 494, 496-97 (7th Cir. 2001)).

USOPC alleged in its Complaint that its Olympic Trademarks are distinctive, that Defaulting Defendants have knowledge of USOPC's rights in the Olympic Trademarks, that Defaulting Defendants are not authorized to use the Olympic Trademarks, and that Defaulting Defendants' use of the Olympic Trademarks causes a likelihood of confusion. [1] at ¶¶ 44-50.

Since the Defaulting Defendants have failed to respond or otherwise plead in this matter, the Court

must accept the allegations contained in USOPC's Complaint as true. *See* Fed. R. Civ. P. 8(b)(6);

*Am. Taxi Dispatch, Inc., v. Am. Metro Taxi & Limo Co.,* 582 F. Supp. 2d 999, 1004 (N.D. Ill.

2008). Accordingly, USOPC requests entry of judgment with respect to Count II for willful

infringement and counterfeiting of the Olympic Trademarks against the Defaulting Defendants.

### C.      False Designation of Origin

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must

show that: (1) the plaintiff has a protectable trademark, and (2) a likelihood of confusion will exist

as to the origin of plaintiff's products. *All Star Championship Racing, Inc. v. O'Reilly Auto.*

*Stores, Inc.,* 2013 WL 1701871, *10 (C.D. Ill. Apr. 18, 2013) (*citing Johnny Blastoff, Inc. v. Los*

*Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999)). This is the same test that is used

for bringing a trademark infringement claim under the Lanham Act. *See Neopost,* 403 F. Supp.

2d at 684.

USOPC alleged in its Complaint that Defaulting Defendants are using the federally

registered Olympic Trademarks without authorization on the Counterfeit/Infringing Products.

This creates a likelihood of confusion, mistake, and deception among the general public as to the

affiliation, connection, or association with USOPC or the origin, sponsorship, or approval of

Defaulting Defendants' Counterfeit/Infringing Products by USOPC. [1] at ¶¶ 51-55. Furthermore,

by using the Olympic Trademarks on the Counterfeit/Infringing Products, Defaulting Defendants

create a false designation of origin and a misleading representation of fact as to the origin and

sponsorship of the Counterfeit/Infringing Olympic Products. *Id*. As a result, USOPC requests

entry of judgment with respect to Count III for willful false designation of origin against the

Defaulting Defendants.

IV.     USOPC IS ENTITLED TO MONETARY DAMAGES AND INJUNCTIVE
        RELIEF

The awarding of statutory damages serves dual interests in that it is remedial in nature, but also intended to protect an important public interest. Given the broader economic losses and harm to the job market caused by counterfeiting, coupled with the possible dangers to consumers who are tricked into purchasing low-quality, counterfeit products over the internet, it is important to both penalize defendants and try to deter future violations.

A.      Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *10; *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999). In *Sara Lee*, 36 F. Supp. 2d at 170, the court awarded statutory damages in the amount of $750,000 after estimating the defendants' ill-gotten gains and trebling them to "deter and punish a willful continuous course of infringements and defiance of the judicial process." The *Sara Lee*

analysis included seven factors: (1) the profits made by the defendants; (2) the revenues lost by plaintiff; (3) the value of the mark; (4) the deterrent effect on others; (5) whether the conduct was innocent or willful; (6) whether a defendant has cooperated in providing records; and (7) the deterrent effect on the defendant.

The USPTO's Office of Policy and International Affairs and the National Telecommunications and Information Administration ("NTIA") together working as part of the Department of Commerce's Internet Policy Task Force conducted a review of the relationship between the availability and protection of online copyrighted works and innovation in the Internet economy. The Internet Policy Task Force's White Paper on Remixes, First Sale, and Statutory Damages (White Paper) was published on January 28, 2016, (*See* Exhibit 1), which recognizes in copyright law that reduced damages may be warranted to avoid impeding new creative works, e.g., remixes – works created through changing and combining existing works to produce something new and creative – as part of a trend of user generated content. *Id*. at 98. However, in cases of willful infringement, such as before this Court, the same report finds that high statutory damages are warranted since "[t]hese circumstances present the clearest need for deterrence and punishment." *Id*. at 99. Moreover, regarding straight-out counterfeiting where impeding creativity is not a concern, The Office of the U. S. Trade Representative issued findings of the Special 301 Out-of-Cycle Review of Notorious Markets for 2015, December 2015 (*See* Exhibit 2), highlighted disturbing trends in the marketing and distribution of counterfeit goods online, with escalating levels of counterfeit sales online including an increase in the services that support such operations. With increasing online sales of counterfeit goods, the economic toll of counterfeiting on governments, businesses, and consumers is disturbing.

Accordingly, a significant consideration should be whether infringing sales were made over the internet, with the rationale was that sales over the internet increased the amount of an award because use of the internet made the infringement widely available.

The lack of information regarding Defaulting Defendants' sales and profits makes statutory damages particularly appropriate for default cases like the instant case. *See Petmed Express, Inc. v. medpets.com, Inc.,* 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004). Likewise, Courts have recognized that statutory damages should be awarded without requiring an evidentiary hearing. *See Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 U.S. Dist. LEXIS 31761, *11 (N.D. Ill. Apr. 17, 2008).

### B.    Defendants' Counterfeiting Was Willful

As alleged in USOPC's Complaint, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Olympic Products. [1] at ¶ 25. Defaulting Defendants also deceive unknowing consumers by using the Olympic Trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the internet looking for websites relevant to consumer searches for Olympic products. *See id.* at ¶ 30.

It is clear that Defaulting Defendants' counterfeiting was willful. "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.,* 2004 LEXIS 22563, *19-20 (N.D. Ill. Feb. 25, 2005). As such, knowledge need not be proven directly but can be inferred from a defendant's conduct. *Id.* at 34. In the instant case, Defaulting Defendants clearly had knowledge that their activities constituted infringement or at least a reckless disregard for USOPC's rights in the Olympic Trademarks.

Finally, this Court has deemed counterfeiting willful when defendants default. *See, e.g., Khara Inc. and Ground Works Co., Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 23-cv-14431 (N.D. Ill. Nov. 29, 2023); *Moomin Characters Oy, Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 23-cv-04270 (N.D. Ill. Sept. 15, 2023).

### C.     A High Statutory Damages Award is Appropriate and Just

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C. § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to follow any rigid formula," but instead "enjoys wide discretion." *Id*. In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id*. Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, *16.

In addition, courts have awarded high damage amounts where a defendant's counterfeiting activities attracted wide market exposure through internet traffic or advertisement. *See Coach, Inc. v. Ocean Point Gifts*, 2010 U.S. Dist. LEXIS 59003, *15-16 (D.N.J. Jun. 14, 2010) (high damage awards in counterfeit cases were "due in part to the wide market exposure that the Internet can provide"); *Burberry Ltd. v. Designers Imports, Inc.*, 2010 U.S. Dist. LEXIS 3605, *28-29 (S.D.N.Y. Jan. 19, 2010) (damages amount based, in part, on "Defendant's ability to reach a vast customer base through internet advertising").

In similar cases involving willful internet-based counterfeiting, this Court has awarded significant damages to the plaintiff to serve the purposes of: (1) deterring the defendant and others situated like him from bringing into commerce counterfeit goods, (2) compensating the plaintiff for damages caused by defendant's infringement, and (3) punishing the defendant appropriately for his counterfeiting activities. Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), USOPC respectfully requests the Court's entry of an award of twenty-five thousand dollars ($25,000) per Defaulting Defendant as it has done in the past under similar circumstances.

### D. USOPC is Entitled to Permanent Injunctive Relief

In addition to the foregoing relief, USOPC respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating USOPC's registered trademark rights in the Olympic Trademarks, including at least all injunctive relief previously awarded by this Court to USOPC in the TRO and Preliminary Injunction. USOPC is also entitled to injunctive relief so it can quickly act against any new websites and online marketplace accounts that are identified, found to be linked to Defaulting Defendants, and selling Counterfeit USOPC Products. *See, e.g., Khara Inc. and Ground Works Co., Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 23-cv-14431 (N.D. Ill. Nov. 29, 2023); *Moomin Characters Oy, Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 23-cv-04270 (N.D. Ill. Sept. 15, 2023).

### V. CONCLUSION

USOPC respectfully requests that the Court enter default and default judgment against each Defaulting Defendant, award statutory damages in the amount of twenty-five thousand dollars ($25,000) per Defaulting Defendant pursuant to 15 U.S.C. § 1117(c), and enter a

14

permanent injunction order prohibiting Defaulting Defendants from selling Counterfeit/Infringing

Products, and transferring all assets in Defaulting Defendants' financial accounts operated by

Walmart to USOPC.

DATED:  October 18, 2024                              Respectfully submitted,

                                                     */s/ Keith A. Vogt*
                                                     Keith A. Vogt (Bar No. 6207971)
                                                     Keith Vogt, Ltd.
                                                     33 West Jackson Boulevard, #2W
                                                     Chicago, Illinois 60604
                                                     Telephone: 312-971-6752
                                                     E-mail:  keith@vogtip.com

                                                     ***ATTORNEY FOR PLAINTIFF***

**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2024, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, I will electronically publish the documents on a website, and I will send an e-mail to the e-mail addresses identified and provided for Defendants by third parties that includes a link to said website.

/s/ *Keith A. Vogt*
Keith A. Vogt, Esq.

16